**THE SUPREME COURT, STATE OF WYOMING**

**2026 WY 73**

**APRIL TERM, A.D. 2026**

**July 7, 2026**

|  |  |
|---|---|
| IN THE INTEREST OF RCR, a minor child,<br><br>STATE OF WYOMING, DEPARTMENT OF FAMILY SERVICES; WYOMING BOYS' SCHOOL; and DALE WEBER, in his official capacity as Superintendent of Wyoming Boys' School,<br><br>Appellants<br>(Respondents),<br><br>v.<br><br>THE STATE OF WYOMING,<br><br>Appellee<br>(Petitioner). | S-25-0263, S-25-0264 |

*Appeal from the District Court of Uinta County*
*The Honorable James C. Kaste, Judge*

*Representing Appellant:*
> Keith G. Kautz, Attorney General; Christina F. McCabe, Deputy Attorney General. Argument by Ms. McCabe.

*Representing Appellee:*
> Loretta Howieson Kallas, Uinta County and Prosecuting Attorney, Evanston, Wyoming. Argument by Ms. Kallas.

*Guardian ad Litem:*
> Joseph R. Belcher, Director, and Kimberly Skoutary Johnson, Chief Trial and Appellate Counsel, of the Wyoming Office of Guardian ad Litem. Appearance by Ms. Johnson.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ., and PEASLEY, DJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**PEASLEY, District Judge**.

[¶1]   On May 23, 2025, the Uinta County Attorney's Office (the State) filed a delinquency petition against RCR, a minor child.  On May 27, 2025, RCR appeared before the juvenile court for an initial hearing, requested counsel, and denied the allegations. Without objection from the guardian ad litem, based upon the State's recommendation, the juvenile court ordered RCR placed at the Wyoming Boys' School (WBS) for "an indefinite period up to his 21st birthday or until successful completion of the program."

[¶2]   Following RCR's initial appearance, WBS refused to accept RCR without a prior delinquent adjudication.  On July 11, 2025, WBS appeared before the juvenile court at a show cause hearing and argued that without adjudication, WBS was not obligated to accept RCR.  The juvenile court disagreed, found WBS in contempt, and allowed WBS to purge their contempt by accepting RCR pending adjudication.  On July 24, 2025, RCR admitted to the allegations contained in the May 23rd delinquency petition and the juvenile court adjudicated RCR delinquent.  The juvenile court entered written orders on July 11, 2025, finding WBS in contempt, and on August 14, 2025, for RCR's adjudication and disposition. The Attorney General's Office appealed both orders, and after consolidating the appeals and finding error, we reverse.

## ISSUES

[¶3]   The State raises two issues, which we re-phrase as follows:

  I.    Is the appeal rendered moot by WBS purging contempt and the juvenile court's subsequent order adjudicating RCR delinquent, and if so, does an exception to the mootness doctrine apply?

  II.   Did the juvenile court abuse its discretion by holding WBS and Superintendent Weber in contempt for failing to accept RCR prior to adjudication?

## FACTS

[¶4]   On May 23, 2025, Evanston police arrested RCR and placed him in the Sweetwater County Juvenile Detention Facility.  The same day, the State filed a petition and supporting affidavit alleging RCR committed delinquent acts of burglary, attempted theft, interference with a police officer, property destruction, and defacement.  On May 27, 2025, RCR appeared before the juvenile court for an initial hearing.

[¶5]   At the initial hearing, the juvenile court advised RCR of his rights and RCR denied the allegations and requested counsel.  Pending further proceedings, the juvenile court

1

addressed placement and the State, the guardian ad litem, and RCR's grandmother agreed that RCR should be placed in the Department of Family Services' (DFS) legal custody with constructive placement at WBS. The juvenile court ordered RCR into DFS's legal custody and placed him at the Sweetwater County Juvenile Detention Facility pending transport to WBS. The juvenile court ordered RCR to remain for an indefinite period of time, not to exceed his 21st birthday, and to complete the program.

[¶6] After failed attempts to admit RCR to WBS, the State filed a motion for order to show cause against WBS, seeking to hold WBS in contempt for failing to accept RCR. WBS responded to the State's motion for order to show cause, asserting it did not willfully violate the court order because it could not accept RCR without an adjudication of delinquency. On July 11, 2025, the juvenile court conducted a contempt proceeding "to resolve the parties' differing interpretations of the Wyoming Boys' School's obligation to detain juveniles alleged to be delinquent prior to adjudication."

[¶7] Following the contempt hearing, the juvenile court entered a contempt order determining that Wyoming law authorizes placement of alleged delinquent juveniles at WBS and WBS's refusal to accept RCR pre-adjudication was contemptuous. Thereafter, WBS and Superintendent Weber purged their contempt by picking up RCR from the detention center, transporting him to WBS, and admitting him to WBS without an adjudication of delinquency. On July 24, 2025, the juvenile court conducted an adjudicatory and dispositional hearing where RCR admitted the allegations of delinquency. The juvenile court proceeded to disposition, and on August 14, 2025, an order was entered where RCR was again ordered to complete WBS's program.

[¶8] On appeal, WBS challenges the contempt order, arguing it was unlawful since the statutes do not authorize WBS to accept minors that are not adjudicated delinquent. The State argues the order finding WBS in contempt is valid because WBS is a "facility" recognized by law to accept alleged delinquent juveniles pending adjudication. Both parties, as well as the guardian ad litem, argue the mootness doctrine should not preclude this Court's review of the issues.

## STANDARD OF REVIEW

[¶9] "Mootness is a question of law that we review de novo." *In re AB*, 2025 WY 74, ¶ 11, 571 P.3d 1269, 1272 (Wyo. 2025) (quoting *In re DJS-Y,* 2017 WY 54, ¶ 6, 394 P.3d 467, 469 (Wyo. 2017)). WBS argues the juvenile court abused its discretion by finding it in contempt based upon an unlawful order. We review civil contempt orders for an abuse of discretion. *Mascaro v. Mascaro*, 2024 WY 45, ¶ 8, 547 P.3d 321, 324 (Wyo. 2024). However, "[o]ur usual standard of review is lenient." *Heimer v. Heimer*, 2021 WY 97, ¶ 17, 494 P.3d 472, 478 (Wyo. 2021). "We will not interfere with the [juvenile] court's order holding [a party] in [civil] contempt 'absent a serious procedural error, a violation of a principle of law, or a clear and grave abuse of discretion.'" *Burrow v. Sieler*, 2021 WY

2

120, ¶ 14, 497 P.3d 921, 925 (Wyo. 2021) (quoting *Heimer*, 2021 WY 97, ¶ 17, 494 P.3d at 478).

## DISCUSSION

### I. *Mootness*

[¶10]   "The central question in a mootness case is whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." *Pellet v. Pellet*, 2022 WY 65, ¶ 42, 510 P.3d 388, 401 (Wyo. 2022) (internal quotation marks omitted) (quoting *In re SNK,* 2003 WY 141, ¶ 17, 78 P.3d 1032, 1037 (Wyo. 2003)).  "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *In re AB*, ¶ 11, 571 P.3d at 1272 (quoting *In re DJS-Y*, ¶ 6, 394 P.3d at 469).  This case is moot because (1) WBS purged their contempt by accepting RCR into the facility pre-adjudication, and (2) the juvenile court adjudicated RCR delinquent prior to this Court's consideration of the issues on appeal.  However, although the parties agree, and the Court finds, the matters at issue are moot, the parties ask the Court to apply an exception to the mootness doctrine.

[¶11]   We have recognized the rule dismissing a case for mootness is not absolute. *In re DJS-Y*, ¶ 7, 394 P.3d at 469.

> We recognize three exceptions to the mootness doctrine and will consider a moot issue "when: (1) the issue is one of great public importance; (2) we have deemed it necessary to provide guidance to state agencies and lower courts; or (3) the controversy is capable of repetition yet evading review."

*In re AB*, ¶ 16, 571 P.3d at 1273 (quoting *In re DJS-Y*, ¶ 7, 394 P.3d at 469).

### A. Matter of Great Public Importance

[¶12]   "Whether a case presents a question of great importance is a determination to be made by this Court." *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 25, 275 P.3d 438, 449 (Wyo. 2012).  In general, the doctrine of great public importance "must be applied with caution and its exercise must be a matter where strict standards are applied to avoid the temptation to apply the judge's own beliefs and philosophies to a determination of what questions are of great public importance." *Jolley v. State Loan and Inv. Bd.,* 2002 WY 7, ¶ 10, 38 P.3d 1073, 1078 (Wyo.2002) (quoting *Brimmer v. Thomson*, 521 P.2d 574, 578 (Wyo. 1974)).

[¶13]   There is perhaps no greater time to look after an alleged delinquent minor child's interests than at the initial hearing.  Matters of custody and placement of an alleged

delinquent child are worthy of attention, and reviewing pre-adjudication placement options is certainly a matter of great public importance. For minors accused of delinquent acts, the Juvenile Justice Act serves to provide for the minor's best interests while simultaneously protecting the public. Wyo. Stat. Ann. § 14-6-201(c)(i). "The proceedings are equitable and not punitive to accomplish the purpose of providing treatment, training and rehabilitation for children, and to provide for the care, the protection and the wholesome moral, mental and physical development of children coming within its provisions." *JP v. State*, 2022 WY 94, ¶ 15, 514 P.3d 785, 790 (Wyo. 2022) (internal quotations omitted) (quoting *TPJ v. State*, 2003 WY 49, ¶ 25, 66 P.3d 710, 715 (Wyo. 2003)).

[¶14]  The Juvenile Justice Act is replete with requirements to look after a minor child's best interests when making decisions affecting both "permanency" and "placement." *See* Wyo. Stat. Ann. § 14-6-201 et seq.

> Absent any statutory mandate on what a juvenile court is required to consider, a juvenile court considers . . . all factors relevant to the unique circumstances of each child in the Department's custody when it determines what permanency plan **or placement** is in the best interest of the minor child.

*In re LH*, 2025 WY 28, ¶ 23, 565 P.3d 683, 689 (Wyo. 2025) (emphasis added).  Here, the issue concerns placement of a child pre-adjudication.  Placement of a juvenile, at any stage in a juvenile proceeding, is a matter of great public importance.

## B. Guidance to State Agencies and Lower Courts.

[¶15]  By judicial standards, juvenile matters are fast-tracked.  For instance, alleged delinquent children placed in detention or shelter care must be presented to the juvenile court within forty-eight (48) hours. Wyo. Stat. Ann. § 14-6-209(a).  If the juvenile denies the allegations, the juvenile court is to conduct an adjudicatory hearing within sixty (60) days, and in no event more than ninety (90) days, after the delinquency petition was filed. Wyo. Stat. Ann. § 14-6-226(b).  Similarly, absent good cause to delay or postpone, disposition hearings are to be conducted within sixty (60) days of adjudication. Wyo. Stat. Ann. §14-6-226(c).  These specific, critical and time-sensitive matters easily evade judicial review.

[¶16]  Considering the short time frames and expedited settings, juvenile matters are often resolved prior to this Court receiving the opportunity to rule on an issue.  For instance, in the present matter, RCR's initial appearance, the contempt proceeding, and the final adjudication all occurred within ninety (90) days.  Placement at WBS for alleged delinquent minors is a scenario WBS could face repeatedly without this Court's review.  In fact, according to WBS, since 1989 they have relied on an opinion by then-Attorney General Meyer concluding that WBS could only admit adjudicated delinquent juveniles.

4

Accordingly, we find this review provides necessary guidance to state agencies and the lower courts.

### C. The controversy is one capable of repetition.

[¶17] In addition to providing guidance to WBS and lower courts concerning pre-adjudication placement of juveniles, the issues before this Court are capable of repetition. There is a high likelihood that lower courts will continue to place alleged delinquent juveniles at WBS. Indeed, the parties informed this Court that such was already the case. Absent this Court's meaningful review, WBS is likely to be subjected to the same issues again. Therefore, having concluded that all three (3) exceptions to the mootness doctrine apply and favor review, we will consider the issues on appeal despite them being moot.

### II. *The juvenile court abused its discretion by placing an alleged delinquent juvenile at the Wyoming Boys' School.*

[¶18] The State argues the juvenile court properly interpreted the applicable statutes, thereby allowing an alleged delinquent juvenile to be detained at WBS prior to adjudication. Specifically, when considering the juvenile court's authority to detain a juvenile at WBS pre-adjudication, the juvenile court compared Wyoming Statute § 14-6-207(c), stating that "[a] child alleged to be delinquent shall if necessary, be detained in a separate detention home or facility for delinquent children[,]" with Wyoming Statute § 25-3-101(a), that provides in part, that "[a]ny boy who has attained the age of twelve (12) years and who has been ordered committed in compliance with [Wyoming Statute] 14-6-229 may be committed to the Wyoming boys' school." At the contempt hearing, the juvenile court announced:

> And I think that this answer is clear, that the Boys' School is a facility for delinquent children, and that it has an obligation both to commit and detain juveniles under two different statutes, that they are not in conflict with each other. And if the Boys' School is not currently set up to undertake that additional statutory responsibility, it should.

[¶19] The juvenile court held the "plain and unambiguous language of § 14-6-207 permits a child who is merely alleged to be delinquent to be detained in a 'facility for delinquent children.'" The juvenile court reasoned there is a distinction between "detained" and "committed," and because of this difference, there is no conflict between the statutes. That is, because Wyoming Statute § 14-6-207(c) allows for placement of an alleged delinquent juvenile at a "facility for delinquent children," and because WBS qualifies as a "facility for delinquent children," Wyoming Statute §§ 14-6-207(c) and 25-3-101 can be read in harmony. As the juvenile court explained, "[w]hile § 25-3-101 precludes commitment prior to adjudication, nothing in that statute prohibits detention pending adjudication."

[¶20] Wyoming Statute § 25-3-101's prerequisites for "committing" a juvenile to WBS are clear: the juvenile must be at least twelve (12) years of age and committed in compliance with Wyoming Statute § 14-6-229. Furthermore, Wyoming Statute § 14-6-229, the Juvenile Justice Act's "disposition" statute, requires the juvenile court to consider a variety of factors for disposition of a juvenile adjudicated delinquent. This includes recommendations by a multi-disciplinary team, DFS's pre-dispositional report, and any other "reports or evaluations" that are material and relevant. After considering this information, together with the case plan, the Juvenile Justice Act requires the juvenile court to place the child in accordance with those recommendations absent "specific findings" as to why the court deviated from them. Wyo. Stat. Ann. § 14-6-229. Hence, within the Juvenile Justice Act, "disposition" represents the culmination of adjudication and an admission or finding of delinquency, coupled with careful consideration of various reports and opinions. This lies in stark contrast to "detention" of a juvenile pre-adjudication.

[¶21] While we agree with the juvenile court that "detention" and "commitment" have vastly different meanings, the plain language of the Juvenile Justice Act, Wyoming Statute § 14-6-201 et seq., in fact *does* prohibit detention at WBS pending adjudication. Unlike disposition, the Juvenile Justice Act defines "detention" as "the temporary care of a child in physically restricting facilities pending court disposition or the execution of a court order to place or commit a child to a juvenile detention facility." Wyo. Stat. Ann. § 14-6-201(a)(xii). Notably, a "juvenile detention facility" specifically excludes WBS as an option. Wyo. Stat. Ann. §14-6-201(a)(xxiv). In other words, the definition of "detention" under the Juvenile Justice Act prevents the juvenile court from entering an order placing an alleged delinquent juvenile at WBS for purposes of "detention." Other statutes, read *in pari materia*, demonstrate that WBS is an improper setting for pre-adjudicated juveniles.

[¶22] While Wyoming Statute § 25-3-101 et seq. is specific to WBS, Wyoming Statute § 14-6-207(c) is part of the more generally applicable Juvenile Justice Act. Wyoming Statute § 25-3-103(a) explains the "discipline in the Wyoming boys' school shall be reformatory." In contrast, there is no legal requirement for a detention facility to be "reformatory." By nature, "detention" encompasses societal goals of protecting the individual and the public, pending the outcome of charges, while honoring the charged individual's constitutional rights. Indeed, due process rights apply to pretrial detention. "Pretrial detention satisfies due process only if its purpose is regulatory rather than punitive." *United States v. Briggs*, 697 F.3d 98, 101 (2d Cir. 2012) (citing *United States v. Salerno*, 481 U.S. 739, 746–47, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987)). Conversely, "commitment" recognizes a legal violation and an acknowledgment of a wrong, both by the individual and by the courts, with specific, mandatory considerations for the juvenile court when determining the location of the same.

[¶23] Furthermore, Wyoming Statute § 25-3-101 demonstrates a clear intent to specify which juveniles qualify for enrollment or "commitment" at WBS, and by doing so,

eliminates those who do not qualify. WBS does not qualify as a "juvenile detention facility" and RCR's placement at WBS was a detainment. Wyo. Stat. Ann. § 14-6-201(a)(xii). Before a juvenile may be committed to WBS, Wyoming Statute § 25-3-101 requires there to have been a disposition. Not to be underestimated, prior to disposition as described at Wyoming Statute § 14-6-229, the presiding juvenile court judge must review the multidisciplinary team report, DFS's pre-dispositional report, and any other material reports or evaluations presented at the dispositional hearing.

[¶24] Notwithstanding the aforementioned qualifications required to commit a juvenile to WBS, not all juveniles adjudicated delinquent qualify for placement at WBS. For example, pursuant to Wyoming Statute §§ 14-6-251(a)(i) and 14-6-252(a)(i), an adjudicated delinquent juvenile must attain a sanction level 4 or 5 for placement at WBS. Applying the juvenile court's reasoning, any juvenile may be "detained" at WBS pending adjudication for an "indefinite period" regardless of the severity of the alleged acts. The juvenile court's interpretation renders Wyoming Statute §§ 25-3-101, 14-6-229, 14-6-251(a)(i) and 14-6-252(ai)(i) meaningless. Despite the various statutory requirements limiting enrollment at WBS and WBS's express purpose to be "reformatory" and not qualifying as a "juvenile detention facility," the juvenile court's interpretation allows any juvenile, regardless of the severity of the allegations, to be detained at WBS for an "indefinite period," without affording WBS any meaningful opportunity to meet its statutory obligation to reform the alleged delinquent juvenile.

[¶25] The specific language of related statutes further supports the conclusion the Legislature did not intend for the juvenile court to place alleged delinquent juveniles at WBS prior to adjudication. For example, although Wyoming Statute § 14-6-407 permits placement of a child in need of supervision at a juvenile detention facility if they have been adjudicated delinquent,[1] it specifically forbids detention at WBS. Wyo. Stat. Ann. § 14-6-407(b)(iii). Furthermore, Wyoming Statute § 7-1-108, when identifying the requirements for proper "incarceration" of a juvenile offender, provides that an alleged delinquent minor who poses a serious risk to himself or the safety of others may be placed in a "juvenile detention facility." Wyo. Stat. Ann. § 7-1-108(c). Once again, Wyoming Statute § 7-1-107(b)(i) specifically excludes WBS from the definition of a "juvenile detention facility." In other words, considering Wyoming Statute § 7-1-107(b)(i) prohibits placement of an alleged delinquent minor child who poses a safety risk to himself or the community at WBS, the juvenile court likewise lacks authority to place an alleged delinquent minor at WBS prior to a delinquent adjudication.

---

[1] See Wyoming Statute § 14-6-407(b)(ii) which provides "[i]f facilities or services are not immediately available to house and protect the child, the judge may order the child held in a temporary holding area at the local law enforcement complex. No child in need of supervision shall be placed in a jail, but may be placed in a juvenile detention facility if the child has been adjudicated under article 2 of this chapter for having committed a delinquent act."

[¶26] While the juvenile court reasoned that nothing in Wyoming Statute § 25-3-101 prohibits detention of alleged delinquent juveniles at WBS, there is also no specific statute allowing it. "Under our rules of statutory interpretation, a specific statute will control over a general one dealing with the same subject when they are in apparent conflict." *Cheyenne Newspapers, Inc. v. Bd. of Trs. of Laramie Cnty. Sch. Dist. No. One*, 2016 WY 113, ¶ 23, 384 P.3d 679, 685 (Wyo. 2016).

[¶27] Although Wyoming Statute § 14-6-207(c) permits placement of an alleged delinquent child in a "facility for delinquent children," the Court finds a "facility for delinquent children" in this context equates to "detention" and therefore does not include WBS, whose specific purpose is to "reform" those juveniles who have committed a delinquent act and have henceforth been adjudicated as delinquent and otherwise qualify for placement at WBS. Only at the dispositional phase does a juvenile court have the information it needs (and is required to have) in order to make an informed decision whether WBS is a proper placement.

[¶28] "A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances." *In re AM*, 2021 WY 119, ¶ 9, 497 P.3d 914, 918 (Wyo. 2021) (quoting *In re AA*, 2021 WY 18, ¶ 33, 479 P.3d 1252, 1261 (Wyo. 2021)). There are facilities that have the resources, the ability, and the specific legal authority to *detain* juveniles who are alleged to have committed a delinquent act. *See* Wyo. Stat. Ann. § 18-6-310. However, WBS is not such a facility. Its statutory purpose is to "reform" those juveniles who have committed a delinquent act and correspondingly have been adjudicated as delinquent. At the initial appearance, RCR was alleged to have committed a delinquent act and was not, at that time, a "delinquent child." Accordingly, the juvenile court abused its discretion by ordering the juvenile to be detained at WBS pending adjudication.

## CONCLUSION

[¶29] Although the matter is moot, we find exceptions to the mootness doctrine allow for our review. The juvenile court abused its discretion by finding WBS in contempt. Wyoming law allows placement of certain juveniles adjudicated as having committed a delinquent act at WBS, but it does not allow juveniles to be detained at WBS pending adjudication. Reversed.

8